```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

C. CHARLES CAMMARATA,         )
                              )
          Plaintiff,          )
                              )
     vs.                      )    CA No. 01-2045
                              )
PORT AUTHORITY OF ALLEGHENY   )
     COUNTY,                  )
                              )
          Defendant.          )
```

**MEMORANDUM**

Pending before the Court is Defendant's Motion for Leave of Court to File for Summary Judgment, Docket No. 52 ("Def.'s Mot.") For the reasons discussed below, the Motion is denied. Also pending are Defendant's Motion to Stay Proceedings, Docket No. 51, and Motion to Amend Motion to Stay Proceedings, filed at Docket No. 54. The Court will deny the Motion to Stay Proceedings as moot, consider the second motion as a Motion to Stay Proceedings, and deny that motion.

**I.   INTRODUCTION**

The facts of this case are largely irrelevant to the pending motion and have been provided in the Court's previous Memorandum denying summary judgment in favor of Defendant Port Authority of Allegheny County ("Port Authority.")  See Docket No. 33, December 20, 2004, "Sum. Judg. Memo." Briefly stated, Plaintiff C.

Charles Cammarata was assigned by a temporary employment agency to work at Port Authority as a civil engineer.  Some three years later, in June 1998, the Port Authority decided to fill the position on a permanent basis.  Plaintiff, who was almost 59 years old at the time, applied for the position but was not hired.  Instead, a person under forty years old and - according to Plaintiff -- less qualified than he was selected.  Mr. Cammarata subsequently filed suit pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, claiming that the Port Authority had refused to offer him a full-time permanent position because of his age.

The decision not to grant summary judgment was based on our conclusion that there were genuine issues of material fact concerning the legitimate business reason proffered by Defendant for its refusal to hire Mr. Cammarata.  Port Authority claimed that in 1996, when Plaintiff had applied for another other full-time position as a structural engineer, the company had received negative evaluations of his performance with previous employers. According to Defendant, this precluded Mr. Cammarata from being seriously considered for the engineering position in 1998, even though he was given a "courtesy interview."  In the opinion denying summary judgment, we noted that none of the documentary records from 1996 had been produced, even though affidavits had

2

been provided to support Defendant's position. (Sum. Judg. Memo at 9 and footnote 2.)

The case was set for trial in January 2005, but was continued until March 2005 at the requests of the parties. On March 8, 2005, Mr. Cammarata filed a Motion in Limine and for Discovery Sanctions (Docket No. 38), complaining that on March 4, months after discovery had closed and summary judgment denied, counsel for the Port Authority had provided some 36 pages of records pertaining to Plaintiff's rejected job application from 1996. These documents had not been produced during discovery herein, nor in the previous actions before the Pennsylvania Human Relations Commission and/or the Equal Employment Opportunity Commission ("EEOC.")

In response to Plaintiff's claim that the notes had been deliberately concealed in bad faith, Defendant contended that they had been accidentally discovered when Kathleen Radkoff, a Port Authority employee who was to be called as a witness at the upcoming trial had, "on her own initiative," contacted a former employee to discuss the 1996 decision not to offer Mr. Cammarata a permanent position. (Defendant's Response to Plaintiff's Motion in Limine and for Sanctions, Docket No. 41, Exhibit C, Declaration of Kathleen A. Radkoff.) The former employee, Harold Elsasser, told Ms. Radkoff that when he retired, he had taken numerous documents with him, including his notes about the 1996

decision. He provided her with copies of his notes which she in turn passed along to counsel. As soon as Defendant's counsel reviewed the documents, he forwarded them to Plaintiff's counsel. The Court continued the trial once again to allow Plaintiff to depose Mr. Elsasser regarding the documents.

## II.  ANALYSIS

### A.  Motion for Leave of Court to File for Summary Judgment

On June 30, 2005, before a new trial date was set, the Port Authority filed the now-pending motion for leave to file a second motion for summary judgment. Defendant argues that the new evidence – Mr. Elsasser's notes and his deposition testimony – is highly relevant and could dispose of the matter without the need for trial. (Def.'s Mot., ¶ ¶ 4-5.) Mr. Cammarata opposes the motion, arguing that even if the "new evidence" were considered, issues of material fact would still remain, thus precluding a decision granting summary judgment in Defendant's favor. The Court agrees with Plaintiff.

We assume familiarity with our decision denying summary judgment and with the burden-shifting analysis of employment discrimination claims developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. In the Memorandum denying summary judgment, we disposed quickly of Defendant's first argument that Plaintiff had failed to establish a *prima facie* case of age discrimination (Sum. Judg. Memo. at 7) and

moved to the second step of the McDonnell Douglas analysis to consider Defendant's proffer of a legitimate business reason for failing to hire Mr. Cammarata in June 1998, i.e., that pursuant to Port Authority's employment policy of reviewing a job applicant's references for the ten years prior to the application, the negative references received in 1996 which disqualified him from consideration at that time consequently disqualified him in 1998. (Sum Judg. Memo. at 7.)

We concluded that this explanation "undeniably constitutes a legitimate, nondiscriminatory reason" for the decision not to hire Mr. Cammarata. The burden therefore shifted to Plaintiff to come forth with evidence "from which a fact-finder could reasonably believe defendant's reasons for termination are a pretext for age discrimination, or that defendant was motivated by a discriminatory animus." (Sum Judg. Memo. at 8, *citing* Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).)

Mr. Cammarata argued that the reason offered by Port Authority was pretextual because (1) the reasons for not hiring him had repeatedly changed; (2) there was "no evidentiary support of a 1996 reference check of Plaintiff's former employers;" (3) the individual hired in 1998 had worse references than Plaintiff and lacked the necessary qualifications for the position; (4) there was no evidence of a "mandatory disqualification policy" based on negative references; and (5) Mr. Cammarata was not

interviewed nor were his references checked in 1998 until after the younger, less-qualified, applicant had already been selected for the position. (Sum. Judg. Memo. at 8-9.) In our analysis, we highlighted two arguments which we found particularly persuasive: first, that Defendant failed to produce any documentary support of the negative 1996 reference checks, relying entirely in this regard on affidavits of individuals who "allegedly heard of" those negative comments, and second, that Mr. Cammarata was interviewed only after someone else was selected for the position. (Id. at 9-10.) By identifying these two arguments as particularly persuasive, we did not reject the others and, indeed, found them possible evidence of pretext as well.

As the court succinctly stated in Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995) (*per curiam*), because a decision denying summary judgment is not a final judgment, i.e., the denial has no res judicata effect, it does not bar parties from filing multiple motions. "A renewed or successive summary judgment motion is appropriate especially if one of the following grounds exists: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice." Whitford, id., internal quotation omitted; *see also* Gulezian v. Drexel Univ., CA No. 98-3004, 1999 U.S. Dist. LEXIS

4624, *5-*6 (E.D. Pa. April 8, 1999) and cases cited therein.  "A subsequent motion for summary judgment based on an expanded record is always permissible." Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 251 (D.C. Cir. 1987). Allowing a party to file a successive motion for summary judgment is within the scope of the court's discretion. Whitford, id.

Here, Defendant relies only on the second Whitford reason – new evidence or an expanded factual record.  Port Authority describes this evidence as (1) Plaintiff's application for the job of structures engineer in 1996; (2) Plaintiff's resume; (3) a cover letter from Plaintiff to Mr. Elsasser; (4) several pages of handwritten notes by Mr. Elsasser comparing the qualifications of Plaintiff and other candidates; and (5) two pages of notes by Mr. Elsasser summarizing the explanation provided to him about Plaintiff's disqualification in 1996 because of poor references from previous employers.  (Defendant's Brief in Support of Motion for Leave of Court to File for Summary Judgment, Docket No. 53, "Def.'s Brief," at unnumbered page 2, and attachments thereto.)

Out of all this documentation, only the notes comparing Plaintiff's qualifications to those of other candidates and the notes about the poor references from previous employers are new and relevant to the issue of whether Defendant's proffered reason was pretextual.  The underlying reason, however, remains the same – that is, Plaintiff was not seriously considered for the

7

position in 1998 because of his poor references in 1996. The other materials are, at best, peripheral to this question and show nothing which we did not already know, i.e., Mr. Cammarata's qualifications and the fact that he applied for a position with Defendant in 1996. Moreover, although Mr. Elsasser's notes may provide support for the reason proffered by Defendant, they do not resolve the questions, for instance, of whether a "mandatory" disqualification policy existed and why Mr. Cammarata was given a courtesy interview after the position was already offered to another, allegedly less-qualified, candidate. Thus, contrary to Defendant's argument, this evidence alone does not "dispose of the matter" without the need for trial.

On a completely different tack, Defendant argues that it can now produce a declaration from James Cigan who was Plaintiff's co-worker or supervisor when he was previously employed at Pittsburgh Testing Laboratories. Defendant argues that Mr. Cigan's declaration would show that he provided an employment reference for Mr. Cammarata in 1996 and again in 1998. On both occasions, Mr. Cigan provided the same negative comments about Plaintiff's performance during his previous employment. Defendant claims that this declaration is "entirely consistent with and completely supports" Port Authority's policy of disqualifying a candidate for further consideration if a negative reference was provided by a previous employer. (Def.'s Brief at

unnumbered page 3.)  Plaintiff objects to this declaration on three grounds: first, Defendant has never provided Plaintiff with a copy of this alleged declaration pursuant to its duty to supplement its discovery under Fed.R.Civ.P. 26(e); second, Mr. Cigan's proposed declaration is based only on hearsay, not personal knowledge, and thus may not be used for the purpose intended by the Port Authority; and third, there is no explanation of why the declaration was not presented during the EEOC proceedings or during discovery in this matter. (Plaintiff's Response in Opposition to Defendant's Motion for Leave to File a Second Motion for Summary Judgment, Docket No. 57, "Plf.'s Resp.," at 4-5.)  Again, the Court agrees with Plaintiff.

Mr. Cigan was discussed at Plaintiff's deposition in December 2002, although he was not specifically identified as the person who gave Plaintiff a negative evaluation in 1996. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket No. 31, Exhibit 1, at 22-27, 38-39, 41 and 54.)  Although Defendant argues the declaration would be based on Mr. Cigan's statement of his own actions in 1996 and 1998, it does not explain why the declaration could not have been provided in support of the first motion for summary judgment.  Thus, it cannot constitute "new evidence" which was only acquired after the previous motion was filed.  Like Mr. Elsasser's notes, the

declaration would increase the quantum of evidence to support Defendant's position that Mr. Cammarata received a negative evaluation in 1996, but would not shed light on any other issues.

We conclude that the additional evidence derived from Mr. Elsasser's notes, or from the proposed declaration by Mr. Cigan, would not resolve other issues of material fact remaining in this case. In the interest of judicial economy, the Court finds that entertaining a second motion for summary judgment would simply further delay trial of this matter. Defendant's Motion for Leave to File a Motion for Summary Judgment is therefore denied.

B.   <u>Plaintiff's Motion to Amend Motion to Stay</u>

On June 30, 2005, Defendant filed a Motion to Stay Proceedings, Docket No. 51. Port Authority argued that among the affirmative defenses raised in its answer to the complaint, it asserted that Plaintiff's claims are barred by sovereign immunity. That argument was not raised in Defendant's motion for summary judgment in this case. However, in a motion for summary judgment in <u>Stangl v. Port Authority of Allegheny County</u>, CA 02-1184, pending at about the same time before Judge David S. Cercone of this Court, Defendant argued that it is a Commonwealth entity entitled to immunity from suit under the Eleventh Amendment to the United States Constitution. (Motion to Stay, ¶ 3.) Defendant sought a stay herein pending the decision by Judge Cercone on the summary judgment motion in <u>Stangl</u>, arguing that if

10

he accepted the Eleventh Amendment immunity argument, it would file a similar motion herein and dispose of Plaintiff's claims. (Id., ¶ 7.)

Before the Court could rule on the Motion to Stay, Judge Cercone issued his decision in Stangl, rejecting the Eleventh Amendment immunity argument. Defendant then filed the now-pending Motion to Amend Motion to Stay Proceedings,[1] asserting that the Stangl case had been appealed to the Third Circuit and this case should be stayed until the Court of Appeals reached its decision. Plaintiff opposed the motion to amend, arguing that the immunity argument had been properly rejected in Judge Cercone's "well-reasoned opinion" and would likely be rejected by the Third Circuit as well. (Plaintiff's Response in Opposition to Defendant's Motion to Amend Motion to Stay Proceedings, Docket No. 59, at 1-2.) Moreover, Plaintiff argued that the motion to stay was frivolous because the Port Authority has explicitly waived its right to raise an Eleventh Amendment claim of immunity as a condition precedent to receiving federal funds. (Id. at 2.)

---

[1] The only difference in the basis for the Motion to Stay Proceedings at Docket No. 51 and the pending Motion to Amend the Motion to Stay Proceedings at Docket No. 54 is the stage of review of the immunity argument in Stangl. When Judge Cercone's decision therein was handed down, Defendant should have withdrawn the motion at Docket No. 51 and filed a Motion to Stay based on its new argument that the Third Circuit should be allowed to rule in Stangl. We deny the Motion to Stay Proceedings at Docket No. 51 as moot. We will therefore consider the motion filed at Docket No. 54 as if it were a motion to stay the proceedings pending the Third Circuit's decision in Stangl, rather than a motion to amend Docket No. 51.

11

"The power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Honeywell Int'l Inc. v. Audiovox Communs. Corp., CA No. 04-1337-KAJ et al., 2005 U.S. Dist. LEXIS 22933, *7-*8 (D. Del. May 18, 2005), quoting Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 738 (3d Cir. 1983). "When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." Honeywell, id. at *8 (internal citation omitted).

The parties have not substantively briefed the issue of immunity in this case and the Court will not address the issue *sua sponte* except to note that no reported case has apparently accepted the argument that the Port Authority of Allegheny County is "an arm of the State" immune from suit under the Eleventh Amendment. Taken to its logical conclusion, Defendant could seek a stay of this case until the Supreme Court considers the argument or denies a writ of certiorari. We find no reason to delay resolution of this matter indefinitely on the basis of an argument which has not previously been accepted (if it has been

considered) by other courts and on the tenuous possibility that it may be accepted in another case which may or may not be relevant to the issues herein. Moreover, assuming Defendant believed the immunity argument is applicable to this case, it has failed to explain why the argument was not raised in the previous motion for summary judgment.

This case has been pending for more than four years, in large part as a result of the parties' extended and somewhat contentious discovery period. It has been set for trial numerous times, only to be delayed at counsels' requests. Should Defendant succeed at the Court of Appeals, we anticipate it would immediately request further discovery and briefing on the immunity issue as it relates to the facts of this case, further delaying the ultimate resolution of this matter. In the interest of resolving this long-standing matter in an expeditious manner, the Motion to Amend the Motion to Stay is denied.

C.  Plaintiff's Request for Sanctions

Finally, Plaintiff seeks "fees that he has incurred in having to respond to this frivolous motion [and] as a sanction for the admitted discovery abuse by Defendant." (Plf.'s Resp. at 6.) Plaintiff argues that "had Defendant conducted a reasonable investigation and exercised reasonable diligence in doing so, it would have resulted in the production of [the Elsasser] documents during discovery." (Id. at 3.) Mr. Cammarata contends that

Defendant should be sanctioned for (1) failing to diligently conduct discovery by contacting Mr. Elsasser about his recollection or records of the 1996 application process and (2) failing to comply with EEOC regulations requiring an employer to retain all documents relevant to a pending discrimination charge by allowing Mr. Elsasser to remove the documents when he retired in 2002.  (Id. at 3-4.)

Although we by no means condone Defendant's failure to identify Mr. Elsasser and depose him during the initial discovery period, we have already denied Plaintiff's request for sanctions in this regard.  See Memorandum Order of Court, Docket No. 42, ¶ 5.  Nor do we find that Defendant's motion to stay or its motion to amend the motion to stay were entirely frivolous.  To the extent this portion of Plaintiff's response is interpreted as a motion for sanctions, the motion is denied.

An appropriate Order follows, ruling on the pending motions and setting a date for trial.

                                        _William L. Standish_
                                        William L. Standish
                                        United States District Judge
                                        20 DEC 2005

cc:  Bruce A. Bagin
     Wienand & Bagin
     312 Boulevard of the Allies
     Suite 600
     Pittsburgh, PA 15222-1916
     Email: bruce@wienandandbagin.com

```
Christian Bagin
Wienand & Bagin
312 Boulevard of the Allies
Suite 600
Pittsburgh, PA 15222-1916
Email: christian@wienandandbagin.com

Nicholas J. Evashavik
Evashavik & Evashavik
520 Grant Building
Pittsburgh, PA 15219
Email: nicholas@evashavik.com
```